IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAG TRADING, L.L.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.  CIV-12-745-F |
| vs. | ) Judge |
| | ) |
| LSB INDUSTRIES, INC., | ) Jury Trial Demanded |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff JAG Trading, L.L.C. ("JAG" or "Plaintiff"), by and through its attorneys,

Doerner, Saunders, Daniel & Anderson, L.L.P., alleges as and for its Complaint against

Defendant LSB Industries, Inc. ("LSB" or the "Company") as follows:

### Nature of the Action

1.      This action seeks damages caused by LSB's termination of Plaintiff's conversion

rights in shares of LSB convertible non-cumulative preferred stock (the "Convertible Preferred"),

without proper notice, which deprived JAG of a reasonable opportunity to convert its stock prior

to its redemption.

### Parties

2.      Plaintiff is a limited liability company with its principal place of business located

at 7125 Orchard Lake Road, Suite 202, West Bloomfield, Michigan 48322.  All of its members

reside in the State of Michigan.

3.      LSB is a Delaware corporation with a principal place of business located at 16 S.

Pennsylvania Avenue, Oklahoma City, Oklahoma 73107.  LSB is a publicly-traded company that

lists its common stock on the New York Stock Exchange under the symbol "LXU". Its Convertible Noncumulative Preferred on stock ("Convertible Preferred"), at all times relevant hereto, was traded over the counter under symbol "LSBBP".

## Jurisdiction and Venue

4.      This Court has diversity jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different States.

5.      Venue is proper in this district because the principal place of business of LSB is located in Oklahoma City, Oklahoma.

## Facts Relevant to all Claims

6.      On or about July 21, 1983, LSB issued a series of Convertible Noncumulative Preferred Stock (as previously defined, the "Convertible Preferred") pursuant to the terms set forth in an applicable certificate of designation (the "Certificate of Designation").

7.      The Certificate of Designation specified, inter alia, the various rights of beneficial owners of the Convertible Preferred – including, principally, the right to convert each share of Convertible Preferred into forty (40) shares of LSB common stock.

8.      Specifically, the Certificate of Designation provided, in pertinent part:

> Conversion Privilege. The Convertible Preferred Stock will be convertible at any time at the election of the holder thereof into fully paid and nonassessable shares of LSB common stock. *Each share of Convertible Preferred Stock shall be convertible into 40 shares of LSB common stock...*

> Any conversion may be effected by holders of Convertible Preferred Stock by giving to LSB *written notice of an election to convert at least ten business days prior to the date of conversion.*

Exh. A (emphasis added).

9.      By virtue of this conversion privilege, all holders of LSB's Convertible Preferred had a vested right to acquire 40 shares of LSB common stock ("LXU") at any time prior to the redemption of the Convertible Preferred.

10.     The Certificate of Designation also provided LSB with certain redemption rights for the Convertible Preferred as follows:

> Redemption Rights.  Each share of Convertible Preferred Stock will be redeemable by LSB at par value, $100 per share, (for each fractional one-half share of Convertible Preferred Stock one-half of said par value) at the option of the holder of such stock to the extent that LSB earns net profits after all of the debt owed by LSB to the Senior Lenders has been paid in full.  For this purpose, "net profits" is defined as net income as determined under generally accepted accounting principles.
>
> LSB may at any time, or from time to time as shall be permitted under the laws of Delaware, redeem the whole or any part of its Convertible Preferred Stock by paying to the holders thereof in cash $100 per share ($50 for a fractional one-half share of such Convertible Preferred Stock) at the date fixed for redemption in the notice of redemption [sic].  ***Holders of the Convertible Preferred Stock may convert such stock into LSB common stock as provided above at any time prior to the notice for redemption.***

Id.  (emphasis added).

11.     Beginning in or about November 2011 and continuing through January 2012, Plaintiff purchased, in the open market, various amount of Convertible Preferred, which ultimately totaled 154 shares.

**LSB Breaches the Certificate of Designation by**
**Improperly Redeeming The Convertible Preferred**

12.     On or about December 30, 2011, LSB allegedly transmitted a letter to all "holders

of record" of the Convertible Preferred (the "December 30th Letter").[1]   The December 30th

Letter stated, in pertinent part, as follows:

>      Please be advised that [LSB] is *considering* redeeming its
> outstanding shares of its [Convertible Preferred]…*If* [LSB's]
> Board of Directors approves the redemption of the [Convertible
> Preferred], [LSB] will then issue a notice of redemption providing
> for redemption of the [Convertible Preferred] pursuant to the terms
> of the [Certificate of Designation].  Pursuant to the Certificate [of
> Designation], the redemption price will be $100 per share…or $50
> for a fractional one-half share…
>
>      Management *currently intends* during  February 2012 to
> present to [LSB's] Board of Directors a proposal to redeem the
> [Convertible Preferred], and,     [LSB's] Board of Directors
> approves such redemption of the [Convertible Preferred], a notice
> of redemption will be sent to the holders of record during February
> 2012.

See Exhibit B (emphasis added).

13.     In the December 30th Letter, LSB did not bind itself to take any action regarding

the Convertible Preferred.   LSB did not affirmatively represent that it was redeeming the

Convertible Preferred – just that it was merely "considering" redemption – and, as such, did not

even specify a date in February when such "considered" redemption proposal would be

presented to LSB's Board of Directors.  The December 30th Letter did not give JAG notice of

LSB's intent to redeem, and did not give JAG an opportunity to convert the Convertible

Preferred prior to any planned redemption.

14.     Without any further correspondence, on or about February 21, 2012, LSB

allegedly transmitted a purported "Redemption Notice" to holders of the Convertible Preferred

---

[1] A true and correct copy of the December 30th letter, dated December 30, 2011 and signed by
LSB's General Counsel, David M. Shear, Esq., together with the Affidavit of Mailing regarding

(the "Redemption Notice").[2]  The Redemption Notice stated that LSB's Board of Directors had
resolved to redeem all of LSB's outstanding Convertible Preferred as of March 14, 2012 (the
"Redemption Date") at the $100 per share price set forth in the Certificate of Designation.  See
Exhibit C.

15.     Critically, the Redemption Notice unilaterally terminated Plaintiff's conversion
rights in the Convertible Preferred as of the date of the Redemption Notice, February 21, 2012.
To wit, the Redemption Notice stated,

> No Conversion Rights
>
> ***You are not entitled to convert your shares of [Convertible
> Preferred] from and after the date of this Redemption Notice.***
> The terms of the Certificate [Designation] provide that: "Holders
> of the Convertible [Shares] may convert such stock into LSB
> common stock as provided above at any time prior to the notice for
> redemption." Pursuant to the Certificate [of Designation], the right
> of holders on [Convertible Preferred] to convert [Convertible
> Preferred] into [LSB's] common stock terminated as of the date of
> this Redemption Notice.

See id. (emphasis added).

16.     In other words, the Redemption Notice prevented holders of the Convertible
Preferred from exercising their conversion rights upon receipt of the Redemption Notice –
thereby denying them any opportunity to exercise such rights.

**LSB Negligently Fails to Provide Plaintiff**
**with the December 30th Letter and the Redemption**
**Notice and Unilaterally Redeems Plaintiff's Convertible Preferred**

---

the December 30th Letter, also signed by Mr. Shear and dated March 22, 2012, is annexed hereto
as Exhibit B.

[2] A true and correct copy of the Redemption Notice, dated as of February 21, 2012 and signed by
LSB's General Counsel, David M. Shear, Esq. together with the Affidavit of Mailing concerning
the Redemption Notice, also signed by Mr. Shear and dated March 22, 2012, is annexed hereto
as Exhibit C.

17.     Notwithstanding LSB's breach of the Certificate of Designation by effectively eviscerating Plaintiff's contractual right to convert the Convertible Preferred, without proper notice and an opportunity to convert, ***Plaintiff never even received the December 30th Letter or Redemption Notice*** because LSB negligently failed to properly transmit same to Plaintiff.

18.     To wit, as set forth in LSB's respective Affidavits of Mailing, LSB purportedly mailed both the December 30th Letter and the Redemption Notice to "all holders of record" of the Convertible Preferred "provided to LSB by Computershare Trust Company N.A. ("Computershare"), LSB's transfer agent." See Exhs. B and C, respectively.

19.     Even if the December 30th Letter were considered to be a notice of redemption, LSB, negligently and improperly failed to obtain the names and addresses of all ***beneficial*** holders of record of the Convertible Preferred – like Plaintiff – because LSB failed to inform Computershare that it was required to mail communications to the beneficial holders of record.

20.     With respect to Plaintiff, LSB purportedly mailed the December 30th Letter and Redemption Notice to Cede & Co., P.O. Box 20, Bowling Green Station, New York, NY 10274. See id.

21.     LSB's mailing of the December 30th Letter and Redemption Notice to Cede & Co. was improper, however, because Cede was merely the ***nominal*** holder of record of the Convertible Preferred – akin to a custodian – whereas ***Plaintiff*** was the ***beneficial*** holder of the Convertible Preferred, which were maintained in its brokerage account at Goldman Sachs & Co. ("Goldman Sachs").[3]

---

[3] By way of background, the majority of publicly-traded securities in the United States are not registered in companies' records in the names of their ultimate beneficial owners. Instead, a substantial majority of all public companies' shares are held in "street-name", meaning they are held of record by broker-dealers or banks through their depositories. Most street-name shares are registered in the name "Cede & Co.", the name used by The Depository Trust and Clearing

22.     Had LSB properly conducted its mailing, it would have transmitted the December 30th Letter and the Redemption Notice to Broadridge Financial Solutions, Inc. ("Broadridge"), which maintains the beneficial ownership records for LSB.  In turn, Broadridge would have sent the December 30th Letter and the Redemption Notice to Goldman, and Goldman would have sent the correspondence to Plaintiff.

23.     Instead, LSB negligently and improperly sent the December 30th Letter and the Redemption Notice to Cede, the custodian of Plaintiff's Shares, who did not forward the correspondence.  Plaintiff never received either correspondence.

24.     Thereafter, and without proper notice, on or about March 19, 2012, LSB unilaterally redeemed Plaintiff's 154 Convertible Preferred for a total of $15,400.  On March 19, 2012, LSB's common stock closed at $39.21 per share.

25.     LSB's SEC filing regarding its redemption of the Convertible Preferred, its Form 8-K filed on March 20, 2012, stated that it had redeemed 393 outstanding shares of the Convertible Preferred and that no shares remained in outstanding.

26.     Based upon LSB's SEC filing and its December 30th Letter, only 68 out of the 461 outstanding shares (approximately 15%) of Convertible Preferred were converted pursuant to the conversion rights contained therein.  In other words, the holders of almost 85% of the Convertible Preferred did not exercise their contractual right to convert the Preferred Shares that would have garnered hundreds of thousands of dollars in gains by avoiding LSB's redemption of their shares.

---

Corporation ("DTCC"), which holds shares on behalf of its participant broker-dealers and banks. These participant broker-dealers and banks in turn hold the shares on behalf of their clients, the individual beneficial owners.

27.     This logic-defying scenario – that numerous investors declined to exercise a contractual right that would have garnered considerable financial gains and instead allowed LSB to redeem the Convertible Preferred a fraction of their value – further demonstrates that LSB breached its obligations to the Convertible Preferred and negligently and improperly transmitted the December 30th Letter and Redemption Notice not only with respect to Plaintiff, but also with respect to many other holders of the Convertible Preferred.

## First Cause of Action

### (Breach of Contract)

28.     Plaintiff repeats and re-alleges all allegations set forth in Paragraphs 1 through 27 as though fully set forth herein.

29.     As set forth above, the terms of LSB's Certificate of Designation provided Plaintiff with certain conversion rights in the Convertible Preferred.  Implicit within its contract with LSB, is the obligation that LSB would give JAG notice and an opportunity to convert its Convertible Preferred prior to redemption of the stock.  Because the Certificate of Registration is silent as to the manner in which the notice was to be sent and the time within which JAG would have to convert the Convertible Preferred, LSB was required to provide to JAG notice of the planned redemption in a reasonable manner and to give JAG a reasonable amount of time to convert.

30.     The December 30th Letter was neither notice of LSB's intent to redeem the Convertible Preferred, nor was it sent to JAG in a manner that would reasonably give JAG notice of the planned redemption.  Therefore, LSB breached its contractual obligations to JAG by unilaterally terminating its contractual conversion rights in the Convertible Preferred, and by not

providing JAG with notice and a reasonable opportunity to convert the Convertible Preferred before LSB redeemed the Convertible Preferred on or about March 19, 2012.

31.     LSB's contractual breach directly damaged Plaintiff because it prevented it from exercising its conversion rights in the Convertible Preferred.

32.     But for LSB's contractual breach, Plaintiff would have converted its 154 Convertible Preferred into 6,160 shares of LSB common stock (154 * 40 = 6,160). Instead, LSB improperly stripped Plaintiff of its conversion rights and redeemed the Convertible Preferred for $15,400.00.

33.     Based upon LSB's common stock price as of the date of redemption ($39.21), Plaintiff's 6,160 shares would have been worth $241,533.60 had LSB not terminated Plaintiff's contractual conversion rights.

34.     As a result of LSB's breach of contract, Plaintiff suffered damages in an amount note less than $226,133.60 ($241,533.60 - $15,400 = $226,133.60).

**Second Cause of Action**

**(Breach of Duty of Good Faith and Fair Dealing)**

35.     Plaintiff repeats and re-alleges all allegations set forth in paragraphs 1-34 as though fully set forth herein.

36.     By virtue of the Certificate of Designation and its contractual obligations owed to its shareholders, LSB had a duty to deal fairly and in good faith with JAG.

37.     By failing to give JAG notice of its plan to redeem its Convertible Preferred, and an opportunity to convert JAG's Convertible Preferred to Common Stock in LSB prio r to redemption, LSB breached its duty of good faith and fair dealing owed to JAG.

38.     As a result of LSB's breach of its duty of good faith and fair dealing, Plaintiff suffered damages in an amount not less than $226,133.60.

### Third Cause of Action

### (Breach of Fiduciary Duty)

39.     Plaintiff repeats and re-alleges all allegations set forth in paragraphs 1-38 as though fully set forth herein.

40.     LSB owed a fiduciary duty to the shareholders of its Convertible Preferred to give them reasonable notice and an opportunity to convert their Convertible Preferred to common stock, prior to LSB redeeming the Convertible Preferred.

41.     LSB breached its fiduciary duty to its holders of Convertible Preferred, including JAG, by failing to provide notice of its intent to redeem the Convertible Preferred and an opportunity to convert the Convertible Preferred to common stock in LSB prior to the redemption.

42.     As a result of LSB's breach of its fiduciary duty, JAG has suffered damages in an amount not less than $226,133.60.

### Fourth Cause of Action

### (Violation of Federal Law)

43.     Plaintiff repeats and re-alleges all allegations set forth in paragraphs 1-42 as though fully set forth herein.

44.     By virtue of the Certificate of Stock Designation of the Convertible Preferred, JAG had a vested right to convert its Convertible Preferred to common stock of LSB ("LXU"), traded on the New York Stock Exchange.

- 10 -

45.     The NYSE Listing Agreement is an instrument corresponding to rules of the Securities Exchange Act of 1934 § 78 f(a)(3).  The NYSE Listing Agreement required LSB to provide all of its shareholders with prior notice and a reasonable opportunity to convert its Convertible Preferred to LSB's common stock traded on the New York Stock Exchange.

46.     By failing to give JAG and the other Convertible Preferred shareholders prior notice and a reasonable opportunity to convert their Convertible Preferred, LSB violated federal law.

47.     As a result of the damages caused to it by LSB's actions, JAG has a direct right of action to pursue recovery based upon LSB's violation of the NYSE Listing Agreement and the corresponding rules of the Securities Exchange Act of 1934.

48.     As a result of LSB's violation of federal law, JAG suffered damages in an amount not less than $226,133.60.

### Fifth Cause of Action

### (Breach of Contract/Third Party Beneficiary)

49.     Plaintiff repeats and re-alleges all allegations set forth in paragraphs 1-48 as though fully set forth herein.

50.     As a party holding a vested right to acquire common stock in LSB traded in the New York Stock Exchange ("LUX"), JAG is a third party beneficiary of the Listing Agreement between the New York Stock Exchange and LSB.

51.     LSB violated the NYSE Listing Agreement by failing to give JAG and the other holders of Preferred Convertible notice of its intent to redeem and a reasonable opportunity to convert their stock.

52.     As a result of LSB's breach of the NYSE listing agreement, JAG suffered damages in an amount not less than $226,133.60.

## Prayer for Relief

WHEREFORE, Plaintiff JAG Trading, LLC demands judgment against Defendant LSB Industries, Inc. in an amount not less than $226,133.60, or in the alternative for a judgment requiring LSB to issue common stock to JAG in an amount equal to the damages suffered by it. JAG further demands judgment against LSB for pre and post-judgment interest, and all costs incurred herein, including a reasonable attorneys fee and, such other and further relief as this Court deems just and equitable.

DOERNER, SAUNDERS, DANIEL
& ANDERSON, L.L.P.

By: _____

Lewis N. Carter, OBA No. 1524
Two West Second Street, Suite 700
Tulsa, Oklahoma 74103-3117
Telephone (918) 591-5253
Facsimile (918) 925-5253
lcarter@dsda.com

and

Cynthia J. Becker, OBA No. 21069
201 Robert S. Kerr Ave., Suite 700
Oklahoma City. OK 73102
Telephone (405) 319-3502
Facsimile (405) 319-3509
cbecker@dsda.com

*Attorneys for JAG Trading, L.L.C.*

2481037v1

- 12 -