IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JAG TRADING, L.L.C.,                    )
                                        )
                Plaintiff,              )
                                        )
v.                                      )        No. CIV-12-745-F
                                        )
LSB INDUSTRIES, INC.,                   )
                                        )
                Defendant.              )

## ORDER

On July 2, 2012, plaintiff, JAG Trading, L.L.C., filed this action seeking damages allegedly caused by the termination of its right to convert preferred stock into common stock. In response to a court order, plaintiff filed an amended complaint on July 10, 2012 to provide missing jurisdictional allegations. First Amended Complaint (doc. no. 5). Defendant, LSB Industries, Inc., filed an answer to the First Amended Complaint on August 9, 2012, and thereafter filed a motion to dismiss for failure to state a claim. After defendant filed the motion to dismiss, plaintiff filed its Second Amended Complaint (doc. no. 22). Thereafter, defendant filed a motion to dismiss the Second Amended Complaint, which the court granted on December 27, 2012 (doc. no. 27). The court, however, granted plaintiff leave to file a Third Amended Complaint if plaintiff and its counsel were of the opinion that such complaint could survive a motion to dismiss for failure to state a claim. Order at 11 (doc. no. 27). Plaintiff filed its Third Amended Complaint on January 14, 2013. This matter is before the court on defendant LSB's Motion to Dismiss Plaintiff's Third Amended Complaint and for an Award of Attorneys' Fees, filed January 28, 2013 (doc. no. 29).

Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2),

Fed. R. Civ. P.  Nonetheless, a complaint must also be specific enough to "give defendants notice of the theory under which their claim is made."  <u>Robins v. Oklahoma</u>, 519 F.3d 1242, 1249 (10th Cir. 2008).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[1]  A complaint should not be dismissed for failure to state a claim unless it fails to contain sufficient factual allegations "to state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  In assessing whether a claim is plausible, the court must construe the complaint in the light most favorable to the plaintiff and must presume all factual allegations to be true.  *Id.* at 1965; <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).

> As the Court held in *Twombly*, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . .  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

---

[1]<u>Sutton v. Utah State Sch. for Deaf & Blind</u>, 173 F.3d 1226, 1236 (10th Cir. 1999) (*quoted with approval in* <u>Smith v. United States</u>, 561 F.3d 1090, 1098 (10th Cir. 2009)).

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).  In assessing whether plaintiff's complaint complies with the pleading requirements, the court may consider documents referred to in the complaint if those documents are central to plaintiff's claims and the parties do not dispute their authenticity.  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).

Although plaintiff asserts six claims for relief in its Third Amended Complaint, it realleged the first through fifth claims solely "for the purpose of preserving the record for any possible appeal."  Third Amended Complaint at 1, n. 1 (doc. no. 28).  Thus, the only claim at issue is plaintiff's sixth cause of action, which alleges breach of contract based on a third-party beneficiary theory.[2]  Plaintiff alleges that it – as the beneficial owner of stock – is the third-party beneficiary of the Operational Arrangements issued by The Depository Trust Company ("DTC").  Id. at ¶ 68.  The court must thus determine whether the amended allegations state a plausible claim for relief under New York law.[3]  Under New York law, "[t]o create a third party right to enforce a contract, 'the language of the contract' must *clearly* evidence[] an intent to permit enforcement by the third party'".  Consolidated Edison, Inc. v. Northeast Utilities, 426 F.3d 524, 528 (2d Cir. 2005) (citation omitted; emphasis in original).

---

[2]The background giving rise to plaintiff's claim was set forth in the court's December 27, 2012 order (doc. no. 27) and will not be repeated here.

[3]In its order dismissing the Second Amended Complaint, the court assumed that the Operational Arrangements were executed in the State of New York.  Order at 10, n. 7 (doc. no. 27).  Plaintiff attached a copy of the Operational Arrangements to its response to the motion to dismiss.  While the document does not recite a place of contracting, it does refer to DTC offices in New York City, New York.  *See, e.g.*, Exhibit 1 to Plaintiff JAG Trading, L.L.C.'s Response to Defendant LSB's Motion to Dismiss Third Amended Complaint at 15, 23, 30, 40, 59 (doc. no. 30-1) [hereinafter referred to as "Plaintiff's Response"].  Nonetheless, even if the court were to consider this claim under Oklahoma law, the result would be the same.  Both Oklahoma and New York require clear evidence that the contract at issue was expressly made for the benefit of the party seeking to enforce it.  *See* Consolidated Edison, Inc. v. Northeast Utilities, 426 F.3d 524, 528 (2d Cir. 2005); Campbell v. American Int'l Group, Inc., 976 P.2d 1102, 1108 (Okla. Civ. App. 1999).

For cases in which the claimant is not a party to the contract, but claims third-party rights therefrom, New York has adopted the standard set forth in the Restatement (Second) of Contracts.  In order to claim third-party benefits, the putative third-party beneficiary will be deemed an intended beneficiary if "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties *and* either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary [not relevant here]; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. . . .  An incidental beneficiary . . . is not an intended beneficiary".  A non-party may sue for breach of contract only if it is an intended, and not a mere incidental, beneficiary and even then, even if not mentioned as a party to the contract, the parties' intent to benefit the third party must be apparent from the face of the contract.  Absent clear contractual language evincing such intent, New York courts have demonstrated a reluctance to interpret circumstances to construe  such an intent.

LaSalle Nat'l Bank v. Ernst & Young LLP, 285 A.D. 2d 101, 108-09 (1st Dep't 2001) (citations omitted; emphasis in original).

With these standards in mind, the court has examined the allegations of the Third Amended Complaint and the language contained in DTC's Operational Arrangements.[4]  In the complaint, plaintiff alleges that DTC has a relationship both with issuers of securities and entities described as "Participants".  *See* Third Amended Complaint at ¶¶ 54, 56-57.  Plaintiff claims that its brokerage firm, Goldman Sachs, is a Participant as defined in the Operational Arrangements, and that defendant (as an issuer of securities deposited at DTC) and Goldman Sachs (as a Participant) agreed to comply with the requirements contained in DTC's Operational Arrangements.  Id. at ¶ 67.  One of those requirements, according to plaintiff, is "that notice of changes to the terms of a conversion privilege must be received no fewer than 30 days prior

---

[4]As the Operational Arrangements is referred to in the Third Amended Complaint and defendant has not disputed the authenticity of the document attached to Plaintiff's Response, the court may consider the document when ruling on defendant's motion.

to the effectiveness of the change." Id. at ¶ 64.  Plaintiff claims that defendant "failed to provide the 30-day notice to DTC, prior to the termination of the right to convert the Preferred Convertible, as required by the terms of the Operational Arrangements." Id. at ¶ 66.  Plaintiff alleges that it is entitled to receive the benefits of the Operational Arrangements' notice requirement because Goldman Sachs was acting as its agent. Id. at ¶¶ 67-68.

In its response to the motion to dismiss, plaintiff argues that the Operational Arrangements evidence an intent to benefit beneficial owners such as plaintiff in part because "[t]he Operational Arrangements refer to the "Beneficial Owner' throughout the Operational Arrangements, countless number of times."  Plaintiff's Response at 14.  Plaintiff submits three instances of such references.  *See* Plaintiff's Response at 12-14.  None of these references, however, relate to the notice provision allegedly at issue here.[5]  Moreover, the Operational Arrangements clearly specify that beneficial owners will not receive confirmations or notices from DTC; rather, the Participants are responsible for providing such information.  There is nothing in the Operational Arrangements that indicates defendant intended to give beneficial owners – as opposed to DTC – the benefit of its notice obligations as set forth in the document. At best, plaintiff is a tangential incidental beneficiary of such notice, and then only if Goldman Sachs in turn transmits such notice to plaintiff.  Plaintiff has pointed to no "clear contractual language evincing [an] intent"[6] to permit enforcement of the

---

[5]Plaintiff cites § III(B), which provides that "[i]ssuer or Agent may provide certain information or notice to DTC for distribution to Participants.  Participants are responsible for further distribution to their customers including intermediaries and ultimate beneficial owners."  Exhibit 1 to Plaintiff's Response at 19.  This section refers to Exhibit E "for a summary of important notices".  Id. at 20.  Notice of redemption of preferred shares is not listed on Exhibit E.  *See* id. at 72-73.

[6]LaSalle Nat'l Bank, 285 A.D. 2d at 109.

5

Operational Arrangements by it against defendant; the court therefore will not infer such an intent. This is fatal to plaintiff's third-party beneficiary claim.

Likewise, the court concludes plaintiff cannot present a breach of contract claim against defendant based on the theory that it is the undisclosed principal of Goldman Sachs. While under New York law, a principal may sue to enforce a contract made by its agent,[7] there are no allegations that Goldman Sachs entered into any contract with defendant, much less that defendant breached that contract. The operative contract plaintiff seeks to enforce is between defendant and DTC, not defendant and Goldman Sachs. Therefore, its agency argument fails as a matter of law.

In sum, LSB's Motion to Dismiss Plaintiff's Third Amended Complaint, filed January 28, 2013 (doc. no. 29) is **GRANTED**. The court notes LSB's request for attorneys' fees. Motion, at 1, 7. Fees are requested "consistent with the court's December 27, 2012 Order." *Id.* The December 27 order referred to "the strictures of Rule 11." Doc. no. 27, at 11. However, LSB provides no developed argument in support of the imposition of sanctions under Rule 11 (or on any other basis), and makes no showing of the facts that must be shown, under Rule 11(c), as a prerequisite to relief under that rule. Although the court will agree that the new theory advanced by plaintiff is as meritless as the previous theories, the court **DENIES** the request for attorneys' fees, both for the reasons set forth above and by way of its exercise of its discretion under Rule 11.

It is so ordered this 11th day of March, 2013.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

12-0745p007.wpd

---

[7]*Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*, 663 F.2d 4, 6-7 (2d Cir. 1981).